IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01193-RBJ

SCOTT WARRINGTON,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF MINERAL COUNTY,
THE MINERAL COUNTY SHERIFF'S OFFICE, and
SHERIFF FRED HOSSELKUS, in his official and individual capacity

    Defendants.

## ORDER

Defendants move for partial summary judgment. For the reasons discussed below, the Court grants the motion in part and denies it in part.

**FACTS**

In September 2007 Scott Warrington became a full-time Sheriff's Deputy in Mineral County, Colorado. On July 4, 2010, Deputy Warrington was thrown off a horse that he was riding as part of his duties for the Fourth of July parade. He suffered a serious head injury that rendered him unable to work while he received medical and rehabilitation treatment.

On January 13, 2011 Mr. Warrington's doctor cleared him to return to work on a part-time basis, i.e., four hours per day three times per week for one month; then four hours per day five times per week for one month; then six hours per day five times per week for one month; then full time. The doctor recommended additional restrictions during the part-time period, i.e.,

light duty office work; no responsibility for confronting and arresting suspects; no high stress situations; no firearms; and no climbing or unprotected heights.

Plaintiff requested a reasonable accommodation consistent with his doctor's recommendation. However, he was not permitted to return to work on a full or part-time basis. On March 31, 2011, Dr. David Reinhard sent a letter to Sheriff Hosselkus stating that Deputy Warrington had had an excellent and full recovery; that he had essentially completed treatment other than a routine driving evaluation; and that Dr. Reinhard anticipated releasing him to full unrestricted duty no later than the end of April and most likely sooner. Nevertheless, on April 5, 2011 the Sheriff sent a text message to Deputy Warrington stating that he had filled the deputy sheriff position. On April 14, 2011, Hosselkus sent an email to Deputy Warrington confirming that he had been terminated.

On or about April 29, 2011, Mr. Warrington filed a charge with the EEOC alleging violations of the Americans with Disabilities Act (the "ADA") based on alleged discrimination from December 2010 through his termination. On July 27, 2011 Sheriff Hosselkus issued a new "Mineral County Sheriff's Office Discharge Policy and Procedure for Deputies," allegedly in an effort to cure statutory violations. Notwithstanding that he had terminated Deputy Warrington on April 5, 2011, Sheriff Hosselkus sent Mr. Warrington a letter dated August 17, 2011 in which he indicated that he had only recently received an indication that Mr. Warrington had been cleared to return to work restriction free; that he had filled the position; and that he was laying Mr. Warrington off.

On February 8, 2012, the United States Department of Justice issued Mr. Warrington a Right to Sue under the ADA. He filed this suit on May 8, 2012, asserting (1) violation of the ADA, and (2) pursuant to 42 U.S.C. § 1983, deprivation of his right to equal protection of the

laws guaranteed by the Fourteenth Amendment to the United States Constitution. On January 8, 2013 this Court granted defendants' motion to dismiss plaintiff's claim against the Mineral County Board of County Commissioners under the Americans with Disabilities Act but denied the motion in all other respects. The case is set for a four-day trial to a jury commencing on November 12, 2013.

Presently pending are Defendants' Motion for Partial Summary Judgment [docket entry #50], as supplemented to add an argument that plaintiffs failed to exhaust administrative remedies with respect to a retaliation claim [#59]. The motion became ripe for the Court's review upon the defendants' reply brief on October 25, 2013.

**Discussion**

**A. Americans with Disabilities Act.**

It is evident upon review of the motion and response, and the parties respective exhibits, that there are genuinely disputed issues of material fact, at least including what were the essential functions of the position of Deputy Sheriff; whether and when the plaintiff could have performed those functions; and whether defendants could have provided a reasonable accommodation to the plaintiff's disability. Summary judgment on the ADA claim is inappropriate under Fed. R. Civ. P. 56(a).

**B. Exhaustion of Administrative Remedies.**

Plaintiff's case is based on the simple theory that he was wrongfully terminated, in violation of the ADA, in April 2011. As evidence that he was terminated at that time he relies on telephone conversations he and his parents had with Sheriff Hosselkus on April 5 and 6, 2011 and an email that the Sheriff sent to him on April 14, 2011. See Exhibit 6 to the original complaint [#1-6]. He filed a charge of discrimination with the Equal Employment Opportunity

Commission on May 4, 2011 [#59-1] based upon this alleged wrongful termination. The EEOC issued a right to sue letter on February 8, 2012. [#1-9]. There is no dispute that Mr. Warrington properly exhausted his administrative remedies with respect to his discrimination claim based upon his termination in April 2011.

Notwithstanding what had occurred in April 2011, the Sheriff sent Mr. Warrington a letter on August 17, 2011 in which he both reiterates that he filled Mr. Warrington's position earlier in the year (the April termination) and, seemingly inconsistently, that he is now laying Mr. Warrington off due to the lack of any vacant position. [#1-1]. Without backing down from his position that he was terminated in April 2011, plaintiff alleges that after he filed his EEOC complaint, the Sheriff attempted to put himself in a better light by causing new personnel policies to be enacted and issuing his so-called lay-off letter. This, plaintiff suggests, was in retaliation for the filing of the EEOC complaint. *See* Amended Complaint [#19] at ¶¶4, 16. That in turn has now prompted the defendants to argue that, because Mr. Warrington never complained to the EEOC about retaliation, he has failed to exhaust his administrative remedies as to that claim.

The Sheriff's August 17, 2011 letter is puzzling and has earmarks of a possible effort to fix problems after the fact. Plaintiff can make of it what he will at trial. However, to the extent that plaintiff wishes to go before the jury and argue, "just in case I really wasn't terminated in April but was laid off in August, then I was laid off in retaliation for my filing an EEOC complaint," I agree with the defendants that he did not exhaust his administrative remedies as to that contingent claim.

### C. Qualified Immunity.

The Court considered Sheriff Hosselkus' argument that he is entitled to qualified immunity in its order on defendants' motion to dismiss [#33]. It concluded that the Sheriff is not entitled to qualified immunity. *Id.* at 5-6. The pending motion in substance asks the Court to reconsider that ruling. I remain satisfied that the ruling was correct and therefore reaffirm the Court's previous order.

### D. Equal Protection

The Fourteenth Amendment provides, in pertinent part, "nor shall any state deny to any person within its jurisdiction the equal protection of the laws." As pertinent here, this clause means that defendants may not treat similarly situated persons differently unless there is a rational basis for the difference in treatment. *F.S. Royster Guano Co. v. Commonwealth of Virginia,* 253 U.S. 4123, 415 (1920). *See Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1149 (10th Cir. 2001).

In his Amended Complaint [#19] Mr. Warrington alleged that he was treated differently from both Sheriff Hosselkus and Undersheriff Fairchild. He alleged that the Sheriff sustained a severe eye injury as a youth but was able to continue in law enforcement because of reasonable accommodations. The Undersheriff broke his leg when he fell off a horse but was able to keep his job because he received the accommodation of light duty restrictions and was able to walk with a crutch during his recuperation. *Id.* ¶¶ 46-49. The comparison to Sheriff Hosselkus has subsequently been abandoned. As defended in plaintiff's response brief [#60], plaintiff's equal protection claim is that he and Undersheriff were similarly situated but were treated differently without a rational basis. *Id.* at 16-19.

Mr. Warrington is not suggesting that the defendants discriminated against a class of persons of which he is a member, such as, for example, a class of disabled people.[1] Rather, the plaintiff's claim analytically is a "class of one" equal protection claim based on the contention that he was treated differently from another employee for arbitrary reasons. As a matter of law, however, a public employee cannot maintain a "class of one" claim against a public employer. *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 601-608 (2008); *Pignanelli v. Pueblo School Dist. No. 60,* 540 F.3d 1213, 1220 (10th Cir. 2008).

Even apart from that basic legal proposition, however, the Court finds, beyond any genuine dispute of material fact, that Mr. Warrington and Undersheriff Fairchild were not similarly situated. I am willing to assume for purposes of the pending motion, and plaintiff has presented evidence to support, that in a small sheriff's office such as this one the two men had similar and overlapping job functions. Warrington Deposition [#50-5] at 228.[2] However, there is an obvious and material difference in the context of a law enforcement position between a broken leg and a traumatic brain injury. While Mr. Warrington views his brain injury as "moderate to mild," the fact that he spent 10 days in ICU followed by two months as an inpatient and one month as an outpatient at the Craig Hospital speaks for itself. *Id.* at 86-87.[3] In mid-October 2010, now three months out from his fall, his physician Dr. Ripley included in Mr. Warrington's restrictions no driving, no horseback riding, no guns, and to stay off heights. [#50-

---

[1] It is not clear in any event that disabled persons would be recognized as a suspect class in the same way that classes based upon race, national origin and gender have been recognized. *Cf. Spragens v. Shalala,* 36 F.3d 947, 950 (10th Cir. 1994)(a classification applying to blind persons is neither a suspect nor a quasi-suspect class).

[2] Defendants point out, however, that a portion of the Undersheriff's responsibilities involves service as the Emergency Manager for Mineral County, which is an office job involving a great deal of paperwork.

[3] The Court takes judicial notice that the Craig Hospital in Englewood, Colorado is a renowned rehabilitation hospital. Its web site relates that it "exclusively specializes in the neuro-rehabilitation and research of patients with spinal cord injury (SCI) and traumatic brain injury (TBI)."

11]. In early January 2011 Dr. Ripley described as "additional restrictions" that Mr. Warrington should not be in situations where he would be responsible for arrests, confrontation, or the use of firearms. [#50-9].

Dr. Ripley did indicate at that time that it was OK for Mr. Warrington to return to work on a part time basis (four hours per day three times per week for one month; then four hours per day five times per week; then six hours per day five times per month for one month). However, even on a part time basis he was not to be placed in high stress situations or situations involving climbing or unprotected heights." *Id.* Dr. Ripley's evaluation, particularly as to driving restrictions, was not welcomed by Mr. Warrington, and apparently as a result, Mr. Warrington changed doctors. *See* Ripley letter of March 10, 2011 [#50-17]. On March 31, 2011 Mr. Warrington's new doctor, David Reinhard, informed the Sheriff that, in his opinion, Mr. Warrington had had an "excellent and full recovery from his head injury," and that "[o]ther than completing a routine driving evaluation, he has essentially completed treatment and I fully anticipate releasing him to full unrestricted duty no later than the end of April and most likely sooner."

Obviously that is a much more optimistic assessment, and the Court is in no position to dispute it. The fact remains, however, that the nature and extend of the injuries sustained by Mr. Warrington and Undersheriff Fairchild were substantially different. Mr. Fairchild was out for seven to eight weeks when he broke his leg. He was out a similar period of time later when he had knee replacement surgery. On both occasions he was released by his doctor to return to work with no restrictions.

Finally, even if one could view them in some sense as being similarly situated, I would conclude that there was a rational basis for treating them differently. In *Spragens* the Tenth

7

Circuit concluded that there was a rational basis for treating blind persons as more disabled than other disabled persons, even if Mr. Spragens himself might have had more disability than some blind persons. 36 F.3d at 950-51. Classification does not, the court said, have to be perfect. *Id.* at 951. Here, while the full boat of "essential functions" is a matter of some dispute, it is beyond genuine dispute that the Sheriff kept Mr. Warrington on the payroll for approximately nine months, and that during that period of time Mr. Warrington was unable to perform some plainly essential functions of the position of a deputy sheriff. Even in April 2011 he was not yet cleared to drive, and it was not at all clear as to when he would pass that final hurdle. A broken leg, or at least the Undersheriff's broken leg, is debilitating for several weeks, but to suggest that there can be no rational basis for treating that disability differently from the Warrington injury is to defy reality.

The core of this case is the dispute about whether the defendants did all that they reasonably could and should have done to accommodate Mr. Warrington's serious injury. That dispute is fair game for presentation to a jury of his peers. However, while this Court, construing plaintiff's factual allegations in his favor, denied defendants' Rule 12(b)(6) motion to dismiss, it now finds and concludes that plaintiff has not come forward with evidence that, if believed, would raise his termination to a constitutional level.

**Order**

1. Motion #50 is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that it seeks dismissal of plaintiff's equal protection claim and to the extent it asserted a retaliation claim. It is denied in all other respects.

2. Docket entry #59, entitled Supplement of Defendants' Motion for Partial Summary Judgment," appears in the court file as a motion to supplement. The Court granted defendants

leave to file the supplement during the trial preparation conference.  To remove the gavel from the system, "motion" #59 is GRANTED.

DATED this 5th day of November, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge